UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MANUEL S. YAPCHAI,

    Plaintiff,

v.

ERIK K. SHINSEKI, Secretary,
Department of Veterans Affairs,

    Defendant.
_____/

Case No. 07-15384

Hon. John Corbett O'Meara

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant's motion for summary judgment, filed February 14, 2011. Plaintiff submitted a response on March 3, 2011, as well as his own motion, which the court will construe as a motion for summary judgment, which was filed February 14, 2011. Pursuant to LR 7.1(e)(2), the court did not hear oral argument.

**BACKGROUND FACTS**

Plaintiff, Manuel S. Yapchai, brings this action against his former employer, the Department of Veterans Affairs, alleging race (Asian) and national origin (Chinese) discrimination under Title VII of the Civil Rights Act of 1964. Plaintiff was employed as a physician at the Veterans Affairs Medical Center ("VAMC") in Iron Mountain, Michigan. He was hired in September 2002 for a temporary two-year appointment. In 2004, the VAMC extended Plaintiff's temporary appointment until September 21, 2005. Plaintiff's supervisor at the VAMC was Dr. Craig Holmes, the Chief of Primary Care Service.

Plaintiff was initially assigned to work in primary care, providing in-patient and out-patient services. Within a few months of hiring Plaintiff, Dr. Holmes began to have concerns about his performance. On February 19, 2003, Dr. Holmes had a conference with Plaintiff to discuss the following issues: (1) "Limited examination in ICU with delayed note entry"; (2) "Perceived slow decision-making with regards to patient management"; (3) "Delayed discharge orders"; (4) "Frequent reference, 'I am too busy' to provide needed care or documentation of care"; (5) "Making rounds one time per day, despite high activity in ICU"; and (6) "Requesting nurse to enter orders in computer." Ex. 3A. Dr. Holmes also noted that "I am concerned about limited investment of Dr. Yap Chai with patients he manages." Id.

Dr. Holmes also raised various concerns about Plaintiff's clinical skills several times during 2004. See Ex. 3 at ¶¶ 8-9. He and Dr. John Frahm, the Chief of Staff, agreed to monitor Plaintiff's performance and give him the opportunity to improve. Id. at ¶ 10. At some point, Plaintiff was reassigned from primary care to the Compensation and Pension Clinic, where he performed compensation and pension examinations, a task now performed by a nurse practitioner. Janice Boss, the VAMC Director, testified that Plaintiff was reassigned because he "was unable to handle" the practice of a primary care physician and he "was not able, clinically, to do anything other than . . . compensation and pension exams." Ex. 4 at 9-10.

A patient alleged that Plaintiff abused him during a compensation and pension exam in 2005. An Administrative Board of Investigation ("ABI") investigated the allegations and found them not to be substantiated. The ABI recommended, however, that Plaintiff complete "sensitivity training" with respect to communicating with patients and that Plaintiff "limit personal discussion with patients" during examinations. Dr. Holmes "concluded that although

[Plaintiff] had not abused patients, he exercised poor judgment by discussing his sexual activities with patients." Ex. 3 at ¶11. (Plaintiff denies discussing his sexual activities with patients.)

Dr. Holmes met with Plaintiff on May 27, 2005, to inform him of the ABI's determination. He also informed Plaintiff that his temporary appointment was scheduled to expire on September 21, 2005, and would not be extended. Ex. 3E. Dr. Boss explained that Plaintiff's appointment was not extended because "All that he was clinically capable of handling was this one small area of compensation and pension exams, and that just wasn't enough utility out of a full-time physician position." Ex. 4 at 9-11.

In early August 2005, Plaintiff decided to travel to Rochester Hills, Michigan, approximately 500 miles from Iron Mountain, to have a tooth extracted. He "called in sick" to work and was told that he needed to speak with his supervisor. He asked what would happen if he did not call in and was informed that he would be considered AWOL. Ex. 6 at 35. He called his union contact to ask "if AWOL is not a fireable thing" and was told it was. Id. at 36. Plaintiff then attempted to call Dr. Holmes, who was not in. He was put through to Dr. Limbeck, who told him that he needed a doctor's note when he returned to work. Id. Plaintiff did not tell anyone how long he planned to be out of the office because he was not sure how long he needed and because Dr. Limbeck "did not ask." Id. at 37-38.

Plaintiff did not contact anyone at the VAMC regarding his plans for medical leave after August 11, 2005. He did not report to work between August 11, 2005, and August 31, 2005, and was considered absent without official leave during that time. On August 31, 2005, the VAMC sent Plaintiff a letter informing him that his employment would be terminated effective September 16, 2005, "due to unauthorized absence and failure to follow appropriate leave

procedures." The letter was returned to sender.

Plaintiff returned to Iron Mountain on September 18, 2005, for a farewell party. He returned to the VAMC on September 21, 2005, and brought medical documentation for absences between August 22, 2005, and September 21, 2005. He did not present medical documentation for absences between August 11, 2005, and August 21, 2005. Had Plaintiff not been terminated effective September 16, 2005, his employment would have ended on September 21, 2005, because his appointment was not renewed.

## LAW AND ANALYSIS

### I.     Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When analyzing a motion for summary judgment, the court must view the facts and any reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### II.    Race and National Origin Discrimination Claims

Plaintiff contends that the decision to terminate his employment and the decision not to renew his temporary appointment were both motivated by discrimination based on his race and national origin.

Title VII prohibits employers from discharging or otherwise discriminating against an

employee on the basis of race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e-2. A plaintiff may establish a prima facie case under Title VII by presenting direct evidence of discrimination or by presenting circumstantial evidence satisfying the McDonnell-Douglas burden-shifting paradigm. See, e.g., Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997). Plaintiff does not present direct evidence of discrimination here. Accordingly, Plaintiff must proceed by satisfying the following elements: "(1) that he is a member of a protected group; (2) that he was subject to an adverse employment action; (3) that he was qualified for the position from which he was fired; and (4) that he was treated differently than employees outside of the protected class for the same or similar conduct." Singfield v. Akron Metro. Housing Auth., 389 F.3d 555, 561 (6th Cir. 2004) (citations omitted). "[T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992).

If Plaintiff establishes a prima facie case of discrimination, the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its actions. Once Defendant does so, Plaintiff may survive a motion for summary judgment by showing that Defendant's reason is not the true reason, but instead a pretext for intentional discrimination. To establish such pretext, a plaintiff must show "either (1) that the proffered reasons had no basis *in fact,* (2) that the proffered reasons did not *actually* motivate [her] discharge, or (3) that they were *insufficient* to motivate discharge." Russell v. University of Toledo, 537 F.3d 596, 604 (6th Cir.

2008) (quoting Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir.1994)).

Plaintiff has not established a prima facie case of discrimination because he has not identified any similarly situated individuals who were treated more favorably than he was. In his discovery responses, he claimed that the was treated differently than Dr. Robert Scharffenberg, who currently resides in California. Plaintiff has not, however, produced evidence that Dr. Scharffenberg was similarly situated to him. For example, Plaintiff has not shown that Dr. Scharffenberg was retained despite being AWOL or despite having performance difficulties. Indeed, Plaintiff has not provided any information regarding why Dr. Scharffenberg was similarly situated or why he believes Dr. Scharffenberg was treated more favorably.

Even if Plaintiff did establish a prima facie case, he has not shown that Defendant's legitimate, non-discriminatory reasons for his discharge (AWOL) and for the non-renewal of his appointment (performance concerns) were mere pretexts for discrimination. Plaintiff has admitted that he did not inform his employer that he intended to take an extended leave and has not contested that he did not present medical documentation for the entire leave. Further, Plaintiff has not presented evidence that the concerns regarding his performance were not honestly held by the VAMC. Plaintiff has presented absolutely no evidence that these decisions were motivated by any sort of discriminatory animus. See generally Hartsel v. Keys, 87 F.3d 795, 801 (6th Cir. 1996) ("The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. Rather, employers may not hire, fire, or promote for impermissible, discriminatory reasons."). Accordingly, no reasonable jury could find in Plaintiff's favor on his discrimination claims.

**ORDER**

Therefore, IT IS HEREBY ORDERED that Defendant's February 14, 2011 motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's February 14, 2011 motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that Plaintiff's complaint is DISMISSED WITH PREJUDICE.  Judgment will be entered in favor of Defendant.


                                              s/John Corbett O'Meara
                                              United States District Judge

Date:  March 8, 2011


I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, March 8, 2011, using the ECF system and upon Plaintiff, Manuel Yapchai, at 688 Charing Court, Rochester Hills, MI 48307 by first-class U.S. mail.

                                              s/William Barkholz
                                              Case Manager